1

2

3

4

5

6

7

8

9

10

11

12

**E-filed 6/16/2009**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

13

14

15

16

17

18

19

20

21

22

| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>UNIVERSAL SYNDICATIONS, INC. dba U.S. MONETARY EXCHANGE; ARTHUR MIDDLETON CAPITAL HOLDINGS dba WORLD RESERVE MONETARY EXCHANGE; RODNEY L. NAPIER; MARK R. STORNES; and DOES 1-25,<br><br>                              Defendants. | Case Number C 09-1186 JF (PVT)<br><br>ORDER[1] (1) GRANTING MOTION TO REMAND AND (2) TERMINATING MOTION TO DISMISS AS MOOT<br><br>[re: docket nos. 5, 8, 12] |
| --- | --- |

23

24

25

26

        Pursuant to 28 U.S.C. § 1447(c), the People of the State of California ("the People")

move to remand the instant case to the Santa Cruz Superior Court on the ground that the parties

are not diverse.  Defendants oppose the motion, arguing that diversity jurisdiction exists because

the real party in interest is the County of Santa Cruz.  Also before the Court is a motion by

27

28

[1] This disposition is not designated for publication in the official reports.

1    Defendants to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has

2    considered the moving and responding papers filed by the parties, the oral arguments presented at

3    the hearing on May 29, 2009, and the supplemental briefing submitted following the hearing.

4    For the reasons set forth below, the motion to remand will be granted, and the motion to dismiss

5    will be terminated as moot.

6                                   **I. BACKGROUND**

7            This action arises from an ongoing dispute over the legality of various advertisements for

8    Defendants' products.  All named Defendants are either Ohio corporations or individual citizens

9    of Ohio.  *See* Compl. ¶¶ 6-9, 19-22.  The operative complaint alleges that since March 2006,

10   Defendants have marketed and sold coin holders by advertising that a purchaser will receive

11   "free" coins with the purchase of any coin holder.  *Id.* ¶ 23.  It is further alleged that the coin

12   holder is never sold without the free coins, which obscures the question of whether the coins are

13   in fact free.  *Id.*

14           On February 10, 2009, the People filed the instant action, alleging that Defendants'

15   advertising methods violate certain provisions of California's Unfair Competition Law ("UCL"),

16   Cal. Bus. & Prof. Code § 17200 *et seq*.; the California False Advertising Law ("FAL"), Cal. Bus.

17   & Prof. Code § 17500 *et seq*., and § 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C.

18   § 45.  The complaint seeks injunctive relief and civil penalties pursuant to §§ 17536 and 17537.

19   Compl. ¶ 33.  The prayer also contains a request for restitution.  *Id.* at 11.

20           Defendants subsequently removed the action pursuant to 28 U.S.C. § 1441(a), asserting

21   that this Court has original jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship

22   among the "real" parties in interest and the total amount in controversy.  Defendants assert that

23   removal was proper—and that the Court should deny the instant motion—because the real party

24   in interest is the County of Santa Cruz, a citizen of California for purposes of diversity

25   jurisdiction.  In response, the People contend that the UCL confers a right upon local district

26   attorneys to bring actions on behalf of the state in its sovereign capacity, and the state is not a

27   "citizen" within the meaning of § 1332.

28

Case No. C 09-1186 JF (PVT)
ORDER GRANTING MOTION TO REMAND ETC.
(JFLC1)

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action to federal court if the plaintiff could have filed the action in federal court initially.  28 U.S.C. § 1441(a).  *See also Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir.1988) ("removal of a case from state to federal court in the first instance is a question of federal subject matter jurisdiction.").  In the Ninth Circuit, there is a "strong presumption" against removal and "the defendant always has the burden of establishing that removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted).  A district court must "strictly construe the removal statute against removal jurisdiction."  *Id*.  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Id*.

## III.  DISCUSSION

In order to establish federal diversity jurisdiction, a plaintiff must show that a dispute has arisen between citizens of different states and that the sum or value in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  To determine if diversity jurisdiction exists, courts must examine the citizenship of the real parties to the controversy, not the citizenship of nominal or formal parties.  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980).  "[A] State is not a 'citizen' for purposes of the diversity jurisdiction."  *Moor v. Alameda County*, 411 U.S. 693, 717 (1973).  *See also Dep't of Fair Employment & Hous. ("DFEH") v. Lucent Techs.*, No. C 07-3747, 2007 WL 2947421, at *1 (N.D. Cal. Oct. 9, 2007) ("The State of California is not a 'citizen' for diversity jurisdiction purposes under 28 U.S.C. § 1332."); *California v. Steelcase, Inc.*, 792 F. Supp. 84, 86 (C.D. Cal. 1992), *overruled on other grounds by California v. Dynegy, Inc.*, 375 F.3d 831, 849 (9th Cir. 2004)) ("for diversity purposes, a state is not a citizen of itself. Therefore, it cannot sue or be sued in a diversity action.").  In contrast, "a political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes."  *Moor*, 411 U.S. at 717.

The People contend that a civil suit under the UCL and FAL may be brought by a district attorney on behalf of the state because such an action essentially is a law enforcement action designed to protect the public as a whole.  *See People v. Pac. Land Research Co.*, 20 Cal. 3d 10,

1    17 (1977) ("An action filed by the People seeking injunctive relief and civil penalties is

2    fundamentally a law enforcement action designed to protect the public and not to benefit private

3    parties."). In response, Defendants contend that under *Missouri, Kansas & Texas Ry. Co. v.*

4    *Hickman*, 183 U.S. 53, 59-60 (1901) ("*Missouri Railway*"), a "general governmental interest" is

5    insufficient for a state to be considered the real party in interest for purposes of the removal

6    statute.

7        A.  Statutory Right Under the UCL

8        The UCL expressly confers authority upon "the Attorney General or a district attorney

9    or…a city attorney in a city and county" to bring an action "in the name of the people of the State

10   of California." Cal. Bus. & Prof. Code § 17204. *See also* Cal. Bus. & Prof. Code § 17206(a)

11   ("Any person who engages…in unfair competition shall be liable for a civil penalty…which shall

12   be assessed and recovered in a civil action brought in the name of the people of the State of

13   California by the Attorney General, by any district attorney…"). Accordingly, the plain language

14   of the statute appears to authorize a district attorney—in this case Santa Cruz County District

15   Attorney Bob Lee—to bring a consumer protection action on behalf of the State of California.

16   *See also Steelcase Inc*., 792 F. Supp. at 86 ("The People are the same party as the State of

17   California (State) and the district attorney has the authority to bind the State.") (citing *People v.*

18   *Mendez*, 234 Cal. App. 3d 1773, 1783 (1991)).

19       Relevant case law supports this conclusion. In *California v. Check 'N Go of California*,

20   No. C 07-02789, 2007 WL 2406888 (N.D. Cal. Aug. 20, 2007), the city attorney for the City of

21   San Francisco filed an action on behalf of the State of California against several payday lenders,

22   alleging violations of several state statutes including the UCL. *Id*. at *2. After removing the

23   action from state court, the defendants argued that diversity jurisdiction existed because the real

24   party in interest was the City of San Francisco rather than the State of California. *See id.* at *6.

25   The district court rejected this contention, holding that the UCL expressly authorizes the city

26   attorney to bring a claim on behalf of California. *Id*. at *7. In addition, the district court found

27   the issue of whether the City was an arm of the state or a separate entity to be irrelevant because

28   it was the city attorney, and not the City itself, who filed the action. *See id.*

4

1      In *Steelcase*, the district attorney for the County of Los Angeles brought an action

2  alleging causes of action under the UCL and California's Cartwright Act.  792 F. Supp. at 85.  In

3  its opposition to the People's motion to remand, the defendant argued that the County was the

4  real party in interest because it was the actual purchaser of the products at issue.  *Id*.  The district

5  court rejected this argument, noting that the express language of the UCL confers authority upon

6  the district attorney to bring a claim on behalf of the People.  *Id*.  In addition, the court concluded

7  that the requested remedies—civil penalties and injunctive relief—were characteristic of a law

8  enforcement action brought on behalf of the general public.  *See id.* at 86 ("Civil penalties are not

9  damages recovered for the benefit of private parties; they are more akin to a criminal

10  enforcement action and are brought in the public interest.").  *See also State v. Altus Fin., S.A.*, 36

11  Cal. 4th 1284, 1308 (2005) ("civil penalties under the UCL" have a "public, penal objective" and

12  "when the Attorney General seeks an injunction that will protect the public and prevent

13  defendants from committing future unlawful acts, he is fulfilling primarily a law enforcement

14  function.").

15      B.  Applicability of *Missouri Railway*

16      Defendants argue that *Steelcase* and *Check 'N Go* were wrongly decided because neither

17  case analyzed properly the respective interests of the state and the local entity, and—more

18  importantly—failed to follow or even discuss *Missouri Railway*.  Opp. at 10.  In *Missouri*

19  *Railway*, the state board of railroad commissioners brought an action against a railroad for

20  charging excess tolls for passage over a particular bridge in Missouri.  *See* 183 U.S. at 57.  The

21  Supreme Court was presented with the issue of whether the board of commissioners, which was

22  authorized by statute to bring actions in the name of the state against any railroad in violation of

23  applicable state law, was an arm of the state for purposes of removal.  *See id*. at 54-56.  Under

24  the statute, any "forfeitures and penalties" recovered were to be paid into the school fund of the

25  county in which the action was brought.  *Id*.

26      The Supreme Court noted that from the face of the record before it, removal appeared to

27  have been improper because the action had been brought by the state.  *Missouri Railway*, 183

28  U.S. at 58.  However, the Court observed that the pertinent inquiry for purposes of diversity

5

1   jurisdiction is the identity of the "real" parties in interest. *See id.* at 58. Holding that "the state is

2   such real party when the relief sought is that which inures to it alone, and in its favor the

3   judgment or decree, if for the plaintiff, will effectively operate," *id.* at 59, the Court concluded

4   that the real parties in interest were the people who used the railroad bridge. *Id*. at 59-60 ("The

5   parties interested are the railway company, on the one hand, and they who use the bridge, on the

6   other; the one interested to have the charges maintained as they have been, the others to have

7   them reduced in compliance with the order of the commissioners. They are the real parties in

8   interest, and in respect to whom the decree will effectively operate."). The Court reasoned that

9   any benefit to the state in the form of payments to the school fund or potential costs to the state in

10  the event of an adverse judgment were "incidental" in nature and thus did not affect the analysis.

11  *Id*. at 61 ("the voluntary assumption by the state of the costs in some contingencies of the

12  litigation, or the indirect and remote pecuniary results which may follow from a disobedience of

13  the orders of the court, do not make it the party to whom alone the relief sought inures, and in

14  whose favor a decree for the plaintiff will effectively operate.").

15      Defendants argue that the remedies sought in the instant case similarly will not inure to

16  the state alone, and thus it is the County of Santa Cruz that stands to derive actual benefit from

17  the instant action. However, the implications of a literal application of *Missouri Railway* have

18  been considered—and rejected—in multiple district court decisions. In *California v. Time*

19  *Warner, Inc*, No. CV 08-4446, 2008 WL 4291435 (C.D. Cal. Sept. 17, 2008), attorneys from the

20  City of Los Angeles brought UCL and FAL claims on behalf of the State of California with

21  respect to Time Warner's acquisition of competitor cable and internet providers. *See id.* at *1-2.

22  The district court acknowledged explicitly the holdings in *Moor* and *Missouri Railway*, but it

23  also noted that "*Missouri Railway* has been subsequently limited and distinguished." *Id*. at *2

24  (citing *State of West Virginia v. Morgan Stanley & Co.*, 747 F. Supp. 332, 337 (S.D. W. Va.

25  1990)).[2] In particular, the district court concluded that a state was a party to litigation so long as

26

27      [2] According to *Morgan Stanley*, "[a] narrow reading of *Missouri* would suggest that the
        state is the real party in interest for diversity purposes only when the relief sought inures to the
28      benefit of the state alone. However, subsequent cases have not been so limiting. So long as the

6

1   it has some real interest, "pecuniary or otherwise." *Id*.  The court pointed out that civil penalties

2   may be recovered under the UCL only when the action is brought on behalf of the People, and

3   such funds may be used only for enforcement of consumer protection laws and not for a locality's

4   general fund.  *See id.* ("The UCL…requires that the 'funds shall be for the exclusive use by the

5   Attorney General, the district attorney, the county counsel, and the city attorney for the

6   enforcement of consumer protection laws.'") (quoting Cal. Bus. & Prof. Code § 17206(c)).

7   Noting that "[t]his court is compelled to remand when there is any doubt as to the right of

8   removal," *id*. at *3, the district court remanded the action, concluding that "the State's interest in

9   the enforcement of its consumer protection laws establishes enough of an interest to create doubt

10  that the real party of interest is only the City of Los Angeles." *Id*.

11          Other district courts similarly have limited *Missouri Railway*.  In *Illinois v. LiveDeal,*

12  *Inc.*, No. 08-3287, 2009 WL 383434 (C.D. Ill. Feb. 12, 2009), the state attorney general brought

13  an action on behalf of consumers for violation of a state consumer protection statute and sought

14  injunctive relief, restitution to aggrieved consumers, and civil penalties.  *Id*. at *2.  On a motion

15  to remand, the district court was presented with the issue of "whether the State of Illinois is the

16  real party in interest when, in addition to injunctive relief and civil fines, it also seeks restitution

17  for individual citizens." *Id.* at *1.  The court granted the motion, expressly rejecting the

18  defendants' argument that under *Missouri Railway* a state is the real party only when the benefits

19  of the action inure to the state alone, and concluding that the appropriate test is whether a state

20  has a "substantial stake in the outcome of the suit." *Id*. at *3 (citation omitted).  The court found

21  that the state did have such an interest, noting that the request for "wide-ranging injunctive

22  relief…weigh[ed] heavily in favor of finding a state interest," and that the amount of civil

23  penalties sought greatly would outweigh any restitution paid to individual consumers.  *Id.*

24          In *Wisconsin v. Abbott Laboratories*, 341 F. Supp. 2d 1057 (W.D. Wis. 2004), the

25  attorney general filed an action on behalf of the state, its citizens, and certain private Wisconsin-

26  ───────────────

27  state is more than a nominal or formal party and has a real interest, pecuniary or otherwise, in the
    outcome of the litigation, it has been held that the State is a real party to the controversy and
28  removal on diversity grounds is improper."  747 F. Supp. at 338.

7

1   based organizations. *Id*. at 1059. The defendants argued that pursuant to *Missouri Railway* the

2   claims brought on behalf of the state and those brought by private citizens and organizations

3   should be severed from each other, with the latter claims remaining in federal court. *Id*. at 1061-

4   63. While acknowledging that the state "appear[ed] to be wearing two hats by requesting relief

5   for itself and for private parties," the district court nonetheless found that *Missouri Railway* did

6   not compel it to retain jurisdiction over any of the claims for relief because the state had a

7   "substantial stake" in the entire action. *Id*. at 1063 ("lower courts have not strictly construed the

8   language in *Missouri*, but instead have focused on the state's interest, monetary or otherwise, in

9   the context of the entire case.").

10      In the instant action, the State of California plainly has a substantial interest in the

11  outcome of the instant litigation. If the People prevail, the injunctive remedies they obtain will

12  provide a benefit to all of the citizens of the state. In addition, the potential civil penalties appear

13  to outweigh any restitution, as each individual penalty is an order of magnitude greater than the

14  individual purchase price of Defendants' product. When these practical considerations are

15  coupled with the unambiguous language of the statute and the consistent view of the California

16  courts as to the nature of a UCL action, it is apparent that remand is appropriate.

17      The additional authorities relied upon by Defendants are distinguishable. In *Lucent*, the

18  DFEH brought an action on behalf of a specific individual who allegedly had been subject to

19  employment discrimination. 2007 WL 2947421, at *1. Noting that pursuant to *Missouri*

20  *Railway* the "central factor in determining the real party in interest is which party stands to

21  receive the benefit of the requested relief," the court denied the agency's motion to remand. *Id.*

22  at *2. The district court based its decision to deny remand on the fact that an individual, rather

23  than the DFEH or the state, would be the direct beneficiary of a favorable resolution. *Id.* ("Any

24  monetary damages such as salary compensation, emotional distress damages or punitive damages

25  would be paid to [the aggrieved person] individually.). Under these circumstances, the court

26  found that "DFEH's argument that it is the real party in interest based on its interest in protecting

27  its citizens from unlawful employment discrimination and enforcing its police powers is too

28  broad. A State's general governmental interest in protecting the welfare of all its citizens is not

8

1    sufficient to make it the real party in interest." *Id*.

2        In *California v. M & P Investments*, 213 F. Supp. 2d 1208 (E.D. Cal. 2002), the district

3    court was presented with a question of whether a city attorney could bring a claim on behalf of

4    the state pursuant to Cal. Code. Proc. § 731, an anti-nuisance statute that expressly authorizes a

5    city attorney to bring an action on behalf of the state. *Id*. at 1212.  However, the State and the

6    Attorney General expressly objected to the suit being brought on behalf of the People, and the

7    city attorney conceded that he was acting on behalf of the locality rather than the state. *Id*. at

8    1213-14.  *See also Time Warner*, 2008 WL 4291435, at *2 n.1.

9                                        **III. ORDER**

10        "By enacting UCL and FAL, and expressly limiting any civil penalties to the enforcement

11   of consumer protection laws, the State of California has made it an interest of the State to enforce

12   compliance with consumer protection laws." *Time Warner*, 2008 WL 4291435, at *2.  For the

13   reasons discussed above, this Court finds *Time Warner* persuasive in terms of both its

14   interpretation of *Missouri Railway* and the ultimate result.  If Defendants' position were adopted,

15   almost any UCL action brought by the state against a foreign corporation or citizen would be

16   removable to federal court.  Defendants' allegations of alleged bad faith and misconduct by the

17   Santa Cruz District Attorney's Office in bringing the instant action do not overcome the strong

18   presumption in favor of remand.  To the extent that the circumstances of this case present a

19   relatively close question, any doubt with respect to jurisdiction must be resolved in favor of the

20   non-removing party.  *See Gaus*, 980 F.2d at 566; *Time Warner*, 2008 WL 4291435, at *3.

21        Good cause therefor appearing, the People's motion for remand is GRANTED, and

22   Defendants' motion to dismiss is TERMINATED as moot.  The People's request for costs and

23   fees incurred in connection with bringing the instant motion will be DENIED.[3]  The action is

24   hereby remanded to the Santa Cruz Superior Court for lack of jurisdiction.  The Clerk of the

25   Court shall close the file.

26

27

28        [3] Because removal was not unreasonable, an award of costs and fees is not appropriate.
     *See Time Warner*, 2008 WL 4291435, at *3; *Check 'N Go*, 2007 WL 2406888, at *7.

                                            9

1    IT IS SO ORDERED.

2

3

4

5    DATED:  6/16/09

6

7                  JEREMY FOGEL
                 United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-1186 JF (PVT)
ORDER GRANTING MOTION TO REMAND ETC.
(JFLC1)

1   This Order was served on the following persons:

2   Crystal Mothershead Gaudette     cgaudette@wsgr.com, llow@wsgr.com

3   Jason Michael Heath     Jason.Heath@co.santa-cruz.ca.us, csl026@co.santa-cruz.ca.us

4   Leo Patrick Cunningham     lcunningham@wsgr.com, lmontoya@wsgr.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-1186 JF (PVT)
ORDER GRANTING MOTION TO REMAND ETC.
(JFLC1)